## Commonwealth of Pennsylvania *v.* William H. House, Appellant.

*Criminal law—Embezzlement—Juror—Challenge for cause.*

Where it clearly appears that a juror has formed a fixed opinion of the prisoner's guilt, he should not be permitted to say that he can act impartially, or at least he should not be accepted on his own dictum.

*Qualification of juror—Preconceived opinion.*

Where a juror testifies on his voir dire that he had formed and expressed an opinion with reference to the guilt or innocence of the defendant, but not of a character to prevent him from fairly trying the case, and that if sworn as a juror he could render a verdict in accordance with the evidence produced in court, such juror is prima facie competent.

But this preconceived opinion becomes a fatal objection when it appears that the juror was the owner of a newspaper in which many editorials had been published pronouncing defendant guilty, and that the juror had read these editorials and approved of the sentiments in them with regard to the case.

As evidence of prejudgment the deliberate and repeated publication of opinions with the juror's approval, in a newspaper in part owned by him, is not less conclusive than the deliberate expression of opinion, reduced to writing and signed by the juror, which in Com. v. Cleary, 148 Pa. 26, was held to disqualify.

*Practice, Superior Court—Assignments of error—Rules of court.*

Assignments are defective which do not contain references to the preceding testimony necessary to make them self-explanatory and to show fully on what they are based.

While the practice of presenting an excerpt from the stenographer's notes, in an assignment of error, has obvious advantages, it has manifest limitations, and there are occasions which would be better served by the formal bill of exceptions long employed by the profession, but now apparently regarded, though quite erroneously, as not " up to date."

Argued Dec. 15, 1896. Appeal, No. 65, April T., 1897, by defendant, from judgment of Q. S., Allegheny Co., June Sess., 1896, No. 452, on verdict of guilty. Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY and SMITH, JJ. Reversed. RICE, P. J., WILLARD and WICKHAM, JJ., file dissenting opinions.

Indictment for embezzlement of $26,652.74. Before PORTER and KENNEDY, JJ.

The defendant, an assistant of the city attorney of Pittsburg, having been indicted with his chief for embezzlement, it appeared in evidence that the conduct of the office of the city attorney had been the subject of marked comment in the daily press of that city, and especially in a paper called " The Pittsburg Leader," of which Joseph T. Nevin was part owner.

Nearly all the jurors on the panel admitted an opinion on the case on their voir dire. After the four peremptory challenges allowed defendant had been exhausted, Joseph T. Nevin, a juror, was called and examined. He admitted that he had an opinion on the case; that he was one of the owners of the " Pittsburg Leader," one of the newspapers which had been persevering in its denunciation of defendant; that he had read and approved the editorials in his paper pronouncing defendant guilty of the charge from time to time. Nevin was then challenged for cause, by defendant's counsel, but this challenge was overruled because he answered, " to the best of his knowledge and belief he could render a verdict in accordance with the evidence produced in court."

It appears further that Joseph T. Nevin was permitted to take his seat in the jury box.

The verdict, as indorsed on the indictment, was as follows :

" Defendant, Wm. H. House, guilty as indicted on sixth count."

Judgment as indorsed on indictment :

" July 29, 1896, Deft., W. H. House, sentenced to pay a fine

of $1,000 to the Com., the costs of pros., and imprisonment in Western Pen'y for two (2) years and three (3) months." (10)

*Errors assigned* were, (1) in overruling the appellant's challenge of a juror, Joseph T. Nevin, founded upon his testimony on his voir dire;

. (2) In overruling the appellant's objection to his cross-examination with reference to receiving interest on deposits, as follows, to wit:

· " Q. Well, it would aggregate in that neighborhood? You had deposited the greater portion of that money in those banks by the direction of Major Moreland? A. Yes, sir. Q. There was interest drawn on that deposit, was there not? Objected to. Q. I will ask the question in another way that I do not think can be objectionable. Mr. House, did you not yourself, quarterly, within the four years prior to the finding of this bill of indictment, regularly draw interest on those deposits which I have just mentioned?"

Mr. Patterson: I object to this first as not cross-examination; second, because the records of this court show indictments pending against this defendant and Mr. Moreland, based upon the very matters with reference to which the witness is now interrogated; third, it is not alleged that that money is invested; fourth, it is not within anything of which notice is given by the bill of particulars. Objection overruled. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed.

(3) Refusing to instruct the witness upon his right to refuse to answer the question allowed under the second assignment of error, as follows, to wit:

Counsel for defendant request the court to caution the witness and to instruct him as to his privilege of declining to answer questions which might tend to criminate him.

The Court: I believe we will have to rule that the witness must answer the question. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed.

(4) In overruling the appellant's objection to the following question asked him on cross-examination, to wit:

" Q. In the Tradesmen's National Bank didn't you draw interest down until January, 1895, on the deposit remaining there ? "

Mr. Patterson: I object to this as incompetent, irrelevant and not cross-examination.

The Court: Did this witness testify that he had deposited this money in the Tradesmen's Bank?

The witness: Not any of the money that we are charged with embezzling. That all went to the Freehold Bank. Objection overruled. To which ruling of the court counsel for defendant request an exception. Exception allowed and bill sealed.

(5–8) To the charge of the court which being overruled need not be set out; (9) in entering judgment upon the verdict of the jury finding the defendant guilty as charged in the sixth count of the indictment; (10) in passing sentence upon the appellant " to pay fine of one thousand dollars and costs and imprisonment for two years and three months."

*Chas. A. O'Brien* and *D. F. Patterson,* with them *Chas. W. Ashley,* for appellant.—As to the right of challenge in criminal cases, see Staup v. Com., 74 Pa. 461, O'Mara v. Commonwealth, 75 Pa. 424, and Ortwein v. Commonwealth, 76 Pa. 414; to the same effect, Allison v. Commonwealth, 99 Pa. 17. As to the standard of fixed opinion of the juror, see Com. v. Crossmire, 156 Pa. 304.

*William Yost,* with him *John C. Haymaker,* district attorney, and *John S. Robb,* for appellee.—The single count of the indictment which was submitted to the jury was drawn under sec. 65 of the act of 1860, known as the Criminal Code, P. & L. Dig. 1193, sec. 247. For a recent construction of that section by the Supreme Court, see Com. v. Mentzer, 162 Pa. 646; Com. v. Miller, 107 Pa. 276; Com. v. Rogers, 1 S. & R. 124; Fulmer v. Com., 97 Pa. 503. As to the challenge of the juror, cited: Com. v. Crossmire, 156 Pa. 304; Clark v. Com., 123 Pa. 555; Ortwein v. Com., 76 Pa. 426; Com. v. McMillan, 144 Pa. 610.

The second, third and fourth assignments of error are not according to rule and should be disregarded: Com v. Werntz, 161 Pa. 595.

OPINION BY SMITH, J., January 18, 1897:

The defendant has a constitutional right to trial by an impartial jury. The question whether he has had such trial is raised by the assignment of error to the ruling of the trial judge on the defendant's challenge of the juror Joseph T. Nevin.

The cause of challenge, while not specifically set forth, as would be the better practice, appears from the tenor of the examination to have been that the juror had, in effect, prejudged the case, or had contracted a bias such as to interfere with an impartial judgment.

In all the reported cases in this state, in which an alleged prejudgment has been made the cause of challenge, the examination of the juror has shown nothing more than the formation of an opinion from newspaper or other reports, or from reading the testimony given on a previous hearing or trial. In such cases the rule is well settled that "if from the examination of the juror, it appears that he has the ability and disposition to render a verdict on the evidence alone, the law adjudges him to be competent, notwithstanding it would require evidence to change his impressions or opinions formed from what he had heard or read about the affair under investigation: " Com. v. Crossmire, 156 Pa. 304. An exception is made of an opinion formed from hearing or reading the evidence on both sides on a former trial; "such knowledge excludes the idea of impartiality: " Allison v. Com., 99 Pa. 17; Staup v. Com., 74 Pa. 458; Ortwein v. Com., 76 Pa. 414. But evidence taken before the coroner is not held to create an undue bias: Ibid.

The juror, however, is not to be the final judge of his own frame of mind. It must appear judicially from the attending conditions that the juror "stands indifferent " between the commonwealth and the prisoner, and can reach a conclusion uninfluenced by a preconceived opinion. In Staup v. Com., 74 Pa. 458, the juror, after saying that he had read the evidence on a previous trial, and upon that had formed an opinion as to the guilt or innocence of the prisoner, which he still entertained, and which it would take some evidence to remove, added: " This opinion would not bias or influence my judgment if I were sworn as a juror. If sworn as a juror I could and would make up my verdict exclusively upon the evidence given here, uninfluenced and unbiased by my present opinion." Not-

withstanding the juror's own conviction of his impartiality the Supreme Court held him incompetent.

A challenge may be based on previous conduct by a juror, indicating a bias, as well as on a previously formed opinion. In Com. v. Mosier, 135 Pa. 221, a juror challenged by the commonwealth had conversed with the defendant and had exchanged cigars and drinks with him. The Supreme Court said: "We think this was sufficient. The commonwealth was not bound to accept a juror who had been on such easy terms with the defendant." *E converso*, a defendant would not be bound to accept a juror whose conduct had indicated in equal measure a bias against him. In Com. v. Cleary, 148 Pa. 26, after reversal of a conviction of murder in the first degree, a petition by residents of the county was presented to the court, setting forth that the petitioners were "of the opinion that the requirements of justice will be fully satisfied" by a plea of guilty of murder in the second degree, which the prisoner was willing to enter, and praying the court to receive such plea. A juror who had signed this petition, though not challenged, was held incompetent by the trial judge; and this was sustained by the Supreme Court, Mr. Chief Justice PAXSON saying: "It (the petition) was a deliberate expression of opinion on the part of the petitioners as to the merits of the case, reduced to writing and signed by this juror. We do not think the juror, under the circumstances, should have been allowed to say that he could try the case impartially. Every man who signed that paper disqualified himself from serving as a juror on that case, and the learned judge below was entirely right in dismissing the juror in the summary manner he did." In Com. v. Toth et al., 145 Pa. 308, two jurors, who had served on a jury which had convicted twenty-four persons of riot, were in the following week allowed to serve on the trial of three of these persons for a murder committed during the riot. But it must be borne in mind that participation in a riot by no means implies complicity or even suspicion of complicity in a murder or other crime committed during the riot. Mere presence, giving countenance and acquiescence, is sufficient to convict of riot, and whether the defendants in this case had been proved guilty of more, when tried for riot, does not appear. Nor did the jurors who had served on the trial for riot appear to have had any

knowledge, even from hearsay, of the facts or the evidence in relation to the charge of murder. They testified that they had formed no opinion on the subject, and nothing was shown on which an allegation of prejudgment, or even of bias, could well be founded.

In the present case the juror testified that he had formed and expressed an opinion with reference to the guilt or innocence of the defendant, but not of a character to prevent him from fairly trying the case, and that if sworn as a juror he could render a verdict in accordance with the evidence produced in court. Prima facie, therefore, he was competent as a juror. But this preconceived opinion was not the only ground of challenge. It further appeared from his testimony that he was one of the proprietors of the Pittsburg Leader; that many editorials had been published in the Leader, from time to time, pronouncing the defendant guilty of the charge; that the juror had read these editorials, and had "approved of the sentiments expressed in them with regard to this case."

It does not appear from what source the juror's opinion was derived. But the opinion seems to have been so deliberately formed and so firmly entertained that the journal of which he was part proprietor, with his knowledge and approval, and as a feature of the business from which he derived a profit, set about the work of creating and stimulating public opinion against the defendant, and of propagating a belief of his guilt, and editorially, from time to time, pronounced him guilty of the charge; a proceeding which, unless justified by the facts, would subject him to serious penalties both on indictment and private action for libel. Then, called to sit as a juror on trial of the charge, he thinks that he would be uninfluenced by the opinion which he held while engaged in the conviction of the defendant in this "trial by newspaper." As evidence of prejudgment, the deliberate and repeated publication of opinions, with the juror's approval, in a newspaper in part owned by him, is not less conclusive than the deliberate expression of opinion, reduced to writing and signed by the juror, which in Com. v. Cleary was held to disqualify.

The course pursued by the juror in this case unmistakably indicates a bias against the prisoner too strong to permit a fair and impartial judgment; an opinion which, as tersely expressed

by Mr. Justice AGNEW in Staup v. Com. (supra), "in an undue measure shuts out a different belief." He cannot be permitted to purge himself of this bias by declaring that if sworn as a juror he would not be influenced by it. As said by Mr. Justice PAXSON in Allison v. Com., supra, "Where it clearly appears that a juror has formed a fixed opinion of the prisoner's guilt, he should not be permitted to say that he can act impartially. He may honestly think so, but the prisoner should not be subjected to such a risk. Jurors are but men and may be affected by a previously formed fixed opinion without intending or even knowing it. Besides, few jurors are willing to acknowledge publicly that they cannot act impartially. The law wisely delivers the accused from such a peril." That the opinion of the juror in the present case had been formed a few months prior to the trial, does not meet the objection to it. On the contrary, that it was sufficiently deep-seated to have been held during so long a period indicates its strong and lasting character. It was not pretended that his journal's attitude had been changed or that he had ceased to approve of its views respecting the defendant's guilt, or that he had in any wise changed or modified his convictions on that question; the utmost claimed was that he could act uninfluenced by the opinion he had formed. Stronger reasons for pronouncing a juror disqualified by prejudgment have seldom been presented than are shown in the present case. It is proper to say that the juror was not a volunteer for service on the panel, and while he might have honestly thought himself impartial we may readily believe that he would have preferred not to sit on the trial. Having been regularly drawn and summoned, he was bound to appear; and having stated everything as to which he was questioned, and held competent, he had no option but to obey the ruling of the court and serve. But for the reasons given the challenge should have been sustained.

The second, third and fourth assignments disregard the rules of this court and the well established principles on which they are based. These principles are thus concisely stated by Mr. Justice MITCHELL in Com. v. Werntz, 161 Pa. 591: "The assignments are the pleadings in this court, and are the only part of the case that remains of record here after the remittitur to the court below. They should therefore be self-explanatory

and self-sustaining, giving in each assignment separately the offer with so much of the preceding or accompanying evidence as is necessary to the proper understanding of the offer, the ruling of the court upon it, and if testimony objected to be admitted so much of it as may suffice to show why it was injurious to the party excepting. The neglect of these requirements is not cured by putting the necessary matter in the bill of exceptions or elsewhere in the record or the paper-book. It belongs here whether it appear again elsewhere or not." These assignments do not contain the references to the preceding testimony necessary to make them self-explanatory, and to show fully on what they are based. While the practice of presenting an excerpt from the stenographer's notes, in an assignment of error, has obvious advantages, it has also manifest limitations, of which the present assignments form an instructive example. The purpose here would be better served by the formal bill of exceptions long employed by the profession, but now apparently regarded, though quite erroneously, as not "up to date." Yet, as the case goes back for a new trial, we have at considerable trouble examined the evidence in relation to them, and are of opinion that they are not well founded. The questions embraced in the assignments appear to be within the legitimate scope of the cross-examination of a party, as indicated by the character of the issue.

The assignments relating to passages of the charge are without merit. The charge was a lucid and concise presentation of the issue, as it stood, and stated with precision the ingredients of the offense with which the defendant was charged in the only count of the indictment on which a conviction was finally sought. Its language throughout was conspicuously fair toward the defendant, and all the points on which his counsel asked the court to instruct the jury were affirmed. Surely nothing more than this could be required.

The designation of the count on which the defendant was convicted as the 6th, from the marginal figure opposite its commencement, was not material. This was the count on which the commonwealth asked a verdict, the count to which the defendant made defense, the count on which the court instructed the jury and on which the issue was submitted. It was sufficiently identified by the marginal number, and its designation

by this number in the verdict, even if technically a misdescription, did the defendant no harm. Moreover a repetition of this merely formal error can readily be avoided on another trial.

As to the ninth and tenth assignments, it follows from what we have already said that the judgment was authorized by the verdict. It is also within the statutory limit. We hardly need add, what is apparently overlooked in these assignments, that the "judgment" and "sentence" are one and the same.

All the assignments except the first are overruled. The first assignment is sustained, the judgment is reversed, and a venire facias de novo is awarded.

RICE, P. J., dissenting.

The first assignment of error raises a question as to the qualification of one of the jurors.

In Allison v. Com'th, 99 Pa. 17. one of the rules deducible from the authorities was stated as follows : " Where the juror entertains a fixed and deliberate opinion, no matter how formed, of the prisoner's guilt he is incompetent; and his belief that he can try the prisoner impartially will not remove the disqualification." Does the examination of the juror Nevin show that he had a fixed or deliberate opinion within the meaning of this rule ? If this · question be considered with reference solely to his answers as to the nature, character and strength of his opinion, it is free from difficulty. Thus viewed, it is the ordinary case of a juror admitting that he has formed and expressed an opinion as to the defendant's guilt, without stating how, or upon what evidence, he was led to form it, or that it is a fixed opinion, but asserting that he can and will try the case and render a verdict in accordance with the evidence adduced on the trial, uninfluenced by any former opinion that he may have had. In none of the numerous cases decided by the Supreme Court since Staup v. Com., 74 Pa. 458, has it been held to be error to overrule the challenge under the circumstances just stated. The law no longer presumes that a man, who has formed an opinion from what he has heard or read concerning a case, and has delivered it to others, cannot be perfectly impartial. In Staup v. Com., the more liberal doctrine was announced, that the opinion, which should exclude a juror, must be of a fixed and determined character, deliberately formed and still enter-

tained, which in an undue measure shuts out a different belief. This doctrine has been recognized in all of the later cases: O'Mara v. Com., 75 Pa. 424; Ortwein v. Com., 76 Pa. 414; Curley v. Com., 84 Pa. 151; Allison v. Com., 99 Pa. 17; Weston v. Com., 111 Pa. 251; Clark v. Com., 123 Pa. 555; Rizzolo v. Com., 126 Pa. 54; Com. v. Taylor, 129 Pa. 534; Com. v. McMillan, 144 Pa. 610; Com. v. Toth, 145 Pa. 308; Com. v. Crossmire, 156 Pa. 304. It has frequently been remarked that to return now to the old rule would exclude from the jury box in many instances every man of average intelligence. In the last case Mr. Justice McCollum says: "Hence if from the examination of the juror it appears that he has the ability and the disposition to render a verdict on the evidence alone, the law adjudges him to be competent, notwithstanding it would require evidence to change the impressions or opinions formed from what he has heard or read about the affair under investigation." To this general rule there is one recognized exception, and that is where the juror has formed an opinion from hearing or reading the evidence upon a former trial. In such case he is held to be incompetent, even if the opinion thus formed does not come up to the standard of a fixed opinion: Staup v. Com., supra; Allison v. Com., supra. But this exception has not been extended beyond its strict letter. It does not apply to an opinion formed from hearing or reading the evidence upon a preliminary examination before a coroner or committing magistrate: Allison v. Com., supra; Clark v. Com., supra; nor to the reading of fragmentary reports of the former trial of one jointly indicted with the defendant: Weston v. Com., supra; Taylor v. Com., supra. See also Com. v. Toth, supra.

But it is argued that the present case is exceptional, because of the juror's interest as a part owner of a newspaper in which editorials had appeared concerning the defendant's case. It is vehemently asserted in the printed brief, as it was in the oral argument, that the juror had so far prejudged the case that he could not be impartial; because he was face to face with the question not of the defendant's guilt or innocence under the testimony, but of the defendant's guilt or his own in persecuting and misrepresenting him; either the defendant must be found guilty, so far as the juror was concerned, or the latter was responsible before the public for having persistently accused

and defamed him. When such a case as the counsel suppose is presented, there is little doubt as to the ruling which any fair minded judge will make. But unfortunately for the argument, the challenge was not supported by proof of these facts. They are not to be inferred in order to lay ground for convicting the trial court of error. The question is to be determined upon the evidence pertinent to it, submitted to the court below and brought up with the record, and that alone. To determine it otherwise would be to commit the sin which the counsel so severely and so justly denounce. The facts brought upon the record by the bill of exceptions are as follows : The defendant was arrested in June and was tried in July.· It appears from the examination of the juror, that he is a part owner of the Pittsburgh Leader, a newspaper published in Allegheny County where the case was tried; that during the preceding winter editorials had appeared in that newspaper "pronouncing the defendant guilty;" and that the juror read these editorials and approved the sentiments therein expressed. The juror was not one of the editorial writers, and did not write the editorials in question. Nor, so far as appears, did he inspire them. The nature and extent of his interest in the newspaper property, and of his duties in connection with its management, do not appear. He was of course legally responsible for its editorial utterances, although he may not have directed and controlled them. So also is any person responsible for his utterances concerning the guilt of one accused of a crime, but this of itself does not make him incompetent to sit as a juror in the case. It is to be observed further, that it does not appear in what tone the editorial opinion of the defendant's guilt was expressed, nor upon what evidence, information or investigation it was based ; and it is to be remembered that the opinion was expressed concerning a matter proper for public investigation and information. . Finally, the juror expressed a belief that he could try the case upon the evidence uninfluenced by his former opinion. Comparing his declarations in this regard with many of those expressed by jurors in the cases cited, it will be found, that they are fully up to the legal standard. So far as we can judge from the printed report of his examination taken as a whole, he was candid in his answers, and positive in his belief that he could try the case impartially.

If everything be eliminated from the case except what is shown by the bill of exceptions, a ruling that the juror was disqualified would, in effect, be equivalent to declaring that a part owner of a newspaper, no matter what his connection with its management, is incompetent to sit as a juror in a criminal case, if he has formed or expressed an opinion as to the defendant's guilt, and the same opinion has been editorially expressed, although not by him, in the newspaper. There is no unbending rule of law, which declares, that such a person must be conclusively presumed not to have the ability and the disposition to try the case, and to render a verdict, on the evidence, and that alone. The question in his case as in all others is, whether he has a fixed or deliberate opinion. It is to be determined as a matter of fact from his whole examination and from all the circumstances. His interest in the newspaper in which the editorials appeared is a fact to be taken into consideration along with all the other circumstances, but it is not of itself conclusive. Again, the finding of the trial judge as to the juror's ability and disposition to hear and decide the case impartially upon the evidence is not absolutely binding on us, but it is entitled to great weight. The inquiry turns upon the character of the opinion. Is it a prejudgment of the case? Has it such fixedness and strength as will probably influence and control the juror's verdict or his consideration of the evidence? These are questions addressed primarily to the conscience and discriminating judgment of the trial judge. " Much weight therefore is to be given to the judgment of the court below, in whose presence the juror appears and by whom his manner and conduct as well as his language are scrutinized: " Ortwein v. Com., 76 Pa. 414. " The disposition of a challenge depends on the finding of a fact, and in passing upon such finding here we must consider the evidence as a whole, and remember that the examination was in the presence and under the jurisdiction of the court below, and that it had better opportunity to discover the nature and character of the opinion held by the juror than is afforded this court on review: " Clark v. Com., 123 Pa. 555. The same idea was expressed in Com. v. Crossmire, 156 Pa. 304, where the court said: " It is proper to add that in reviewing the decision of the court below upon a challenge for such cause as is alleged in this case, nothing short of palpable error in it will justify a reversal of it."

It would serve no good purpose to encumber this opinion with further citations or more extended quotations. Viewing the examination of this juror in the light of the general principles enunciated in the cases above cited, and comparing his answers with those given by jurors held therein to be competent, and remembering further that the court below had opportunities which we have not, to judge of his candor and of the nature, character and strength of his opinion, I am not convinced that the court committed error in overruling the challenge. For these reasons I must dissent from the opinion of the majority in sustaining the first assignment.

In my opinion the defendant had a fair trial according to the forms of law. No error was committed either in the trial or the sentence of which the defendant can justly complain; therefore I would affirm the judgment.

WICKHAM, J., dissenting:

Believing as I do that the opinion of the majority of our court in this case tends to establish a rule inconsistent with that deducible from the decisions of our Supreme Court, and not defensible on principle, I fully concur in the dissent.

The answers on voir dire of Mr. Nevin, which were the only evidence in the court below, regarding his competency as a juror, are here subjoined.

"Q. I believe you are one of the proprietors of the Pittsburg Leader? A. Yes sir. Q. Have you personally formed or expressed any opinion with reference to the guilt or innocence of the defendant, W. H. House? A. I have. Q. Is that a settled and fixed opinion in its character? A. I hardly understand. Q. Well, is it an opinion of such a character that it would prevent you from fairly trying the case, if you were sworn as a juror? A. No sir. Q. You think it would not? A. No sir. Q. Are you one of the editorial writers of the Leader? A. No sir. Q. Have you been reading the editorials in the Leader this winter? A. Yes. Q. Have you approved of the sentiments expressed in those editorials with regard to this case? A. Yes sir, I have. Q. Well, many of these editorials pronounced the defendant guilty, I believe, of the charge, from time to time? A. Yes sir."

By the court: "Q. If sworn as a juror, could you try the

case and render a verdict in accordance with the evidence produced here in court, uninfluenced by any opinion that you may have had in the past? A. I would. Q. You could do that, could you? A. I think I could. Q. Could you do that? Could you try the case and render a verdict in accordance with the evidence produced here in court, to the best of your knowledge and belief? A. Yes sir."

Not one of the editorials, referred to in the examination of the juror, were shown to him, or to the court. It appears from a question asked that they were written in the winter, five or six months before the trial, which began on July 13, 1896. The circumstances under which they were composed and published, who inspired them, and "the sentiments expressed," beyond the fact that they declared the defendant guilty, are matters about which we know nothing, the record being silent thereon.

I am unable to assent to the proposition that the owner of an interest in a newspaper which, many months before a case is called for trial, happens to contain editorials expressing belief in the defendant's guilt is necessarily disqualified from sitting as a juror at the trial, although he may have approved the articles when they appeared. It is not his past but his present state of mind that determines his competency. What he has thought, said or assented to in the past may be inquired into for the purpose of discovering the condition of his mind when he is called, but no court is bound to hold, in the face of satisfactory evidence that he is then unbiased, that he is incompetent as a juror, save in the exceptional case referred to in the opinion of our Brother RICE.

The trial judge in the court below in the present case not only heard the juror's answers, but had as well the opportunity which we have not, to scrutinize his manner, appearance and conduct. The things last mentioned were, of course, duly considered, as they always should be (Ortwein v. Commonwealth, 76 Pa. 426), and no doubt had their influence. We have no right, therefore, to say that the juror should have been rejected, unless we adopt the broad rule of exclusion above indicated, the only one that can be invoked to sustain the majority opinion.

If this is to be the rule, anyone called, hereafter, as a juror

will be absolutely disqualified by affirmative answers to the following questions, viz: 1st. Have you any proprietary interest, large or small, in any newspaper published in this community? 2d. Have you at any time heretofore seen and read editorial articles, in that newspaper, expressing belief in the defendant's guilt? 3d. Have you approved of the sentiments expressed in these editorials regarding the case? To question further will be needless and useless because, no matter how well satisfied the court might be, from the juror's other answers of his honesty, intelligence and willingness and ability to try the case with an unbiased mind, he still must be rejected.

The argument that because the juror might perhaps be liable civilly and criminally for what had been published in the newspaper, he therefore would necessarily be interested and prejudiced, applies with equal legal force to one who through letters to friends declares his belief in the guilt of another who is charged with a crime. Even an oral expression of like character may subject the utterer to a civil action. It will scarcely be contended, however, that such possible consequences, in the instances suggested would justify a juror's exclusion.

Looking at the record before us, which is all we can properly consider, I am convinced that the case was well and fairly tried, in every particular, and that the judgment should be affirmed.

WILLARD, J., dissenting:

I am compelled to dissent from the judgment of the court in this case. The challenge of the juror, Joseph Nevin, was properly overruled by the learned trial judge, and I am not inclined to depart from the rule adopted by the Supreme Court in Commonwealth v. Crossmire, 156 Pa. 304, and cases there cited. The judgment of the court below as to the qualifications of this juror in whose presence he appeared and by whom his manner and conduct as well as his language were scrutinized, is entitled to great weight, and should not be questioned here under the facts of this case as fully set forth in the dissenting opinion of the president judge of this court, and of Judge WICKHAM, in which opinions I concur.