## Staup *versus* The Commonwealth.

1. A juror called in a capital case said : " I have formed and expressed an opinion as to guilt or innocence of prisoner ; read evidence of former trial ; still entertain that opinion, which it would take some evidence to remove ; this opinion would not bias or influence my judgment if I were sworn as a juror ; this opinion was formed from reading evidence of former trial. If sworn as a juror I could and would make up my verdict exclusively upon the evidence given here, uninfluenced and unbiassed by my present opinion." *Held*, the juror was incompetent.

2. The opinion which should exclude a juror must be of a fixed and determined character, deliberately formed and still entertained, which in an undue measure shuts out a different belief.

3. When the opinion of the juror has been formed upon the evidence given in a former trial or has been so deliberately formed as to become a fixed belief of the prisoner's guilt, he should be excluded.

4. Where impressions are formed on rumor or newspaper statements which the juror feels conscious he can dismiss, or has no fixed belief or prejudice, and can say he can fairly try the prisoner on the evidence freed from the influence of the impressions, he is competent.

5. On the separate trial for murder of one jointly indicted with another : the other is not a competent witness for the defendant.

6. The Supreme Court will not review the facts on the question of guilt or innocence, but only determine whether the ingredients of murder in the first degree exist.

7. Commonwealth *v.* Flanagan, 7 W. & S. 420 ; McCausland *v.* McCausland, 1 Yeates 378 ; Shay *v.* Commonwealth, 12 Casey 305, approved ; Grant *v.* Commonwealth, 21 P. F. Smith 495, followed.

November 19th 1873.  Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Error to the Court of Oyer and Terminer of *Fayette county :* No. 64, to October and November Term 1873.

At September Term 1872, Jacob Staup and Henry Staup were jointly indicted for the murder of Alpheus Glover.  The indictment was continued until December Term 1872.  At December Term Jacob Staup was separately arraigned and pleaded "Not guilty."  He was tried at that term and found guilty of murder in the first degree.

A rule to show cause why a new trial should not be granted was made absolute and a new trial ordered.

On the 4th of March 1873 he was again tried before Gilmore, P. J., and his associates.

A number of the jurors when called said that they had formed opinions as to the guilt or innocence of the prisoner, from hearing or reading the testimony on the former trial, which opinions still rested on their minds.  They were all challenged for cause, but the challenges were overruled.

Amongst others was J. Evans Finley, who, in answer to the question put to him, said :—

" Have formed and expressed an opinion as to the guilt or innocence of the prisoner ; read evidence of former trial ; still enter-

[Staup v. Commonwealth.]

tain that opinion, which it would take some evidence to remove; this opinion would not bias or influence my judgment, if I were sworn as a juror; this opinion was formed from reading evidence of former trial."

Prisoner challenged him for cause.  He further said :—

"If sworn as a juror, I could and would make up my verdict exclusively upon the evidence given here, uninfluenced and unbiassed by my present opinion."

The challenge was overruled and the juror sworn.  At the request of the prisoner, a bill of exceptions was sealed.

After the Commonwealth had closed her case, the prisoner offered to call Henry Staup, who was jointly indicted with him, to prove that Henry, and not the prisoner, had shot the deceased.

The Commonwealth objected to the competency of the witness, because he was a co-defendant with the prisoner, and was in the same position as to competency as if on trial himself.

The witness was rejected on the ground that he was jointly indicted with the prisoner, and the court sealed a bill of exceptions.

Upon the cross-examination of Elizabeth Glover, a witness for the prisoner, the Commonwealth offered to ask her "if she did not say to Al Bowie, in the presence of your father, on the evening of the murder, that this thing didn't surprise me a bit; that I had been expecting it a long time," for the purpose of affecting her credibility.

The prisoner objected, that the opinion of this witness or any other, or any want of surprise, or any expectation she may have had, wherever expressed, is not material to the issue trying.  The prisoner cannot be affected by it.

Per Curiam :—"We think the evidence competent, as it might have some bearing upon her veracity.  We think it would be but slight, if any; but on this account it is received, and a bill of exceptions sealed."

After the evidence had been closed, the prisoner made the following offer :—

"And now, March 10th 1873, the counsel for prisoner offers to recall Andrew Boyd (who testified as to a pistol, said to be in possession of prisoner some two or three years ago), and to produce said pistol, and to prove by him that it is the same, and then to show that it will not carry the rifle-ball; and that they were not aware that this could be proved until after the adjournment of the court Saturday evening."

Commonwealth objects, "that the case having been closed and all their witnesses gone home, it is too late to admit the evidence.  Also that the prisoner and his counsel verbally admit that they had the pistol in possession all the week, and should have produced it; that the Commonwealth anticipated the production of a pistol and

[Staup *v.* Commonwealth.]

had its witnesses present to meet it, which witnesses are not present, having been discharged by the court two days since."

Per Curiam:—" This case was closed on Saturday about five o'clock, when the witnesses on the part of the Commonwealth were publicly discharged. The offer to open the case is now made on Monday morning, to which time the court stood adjourned, to hear the arguments of counsel and give the case to the jury. This evidence would be opening the case on a material point. We think it would not be proper to hear this evidence now overruled."

The offer was rejected, and a bill of exceptions sealed.

The evidence, both of the Commonwealth and the prisoner, was very voluminous. To understand the questions considered and decided by the Supreme Court, does not require that even a synopsis of it should be given.

The prisoner on this trial was convicted of murder in the first degree.

He removed the record to the Supreme Court by writ of error, and there assigned fourteen errors. The first ten were to the overruling of the prisoner's challenges of jurors—the tenth relating to the challenge of J. Evans Finley.

11. The refusal to allow Henry Staup to testify.

12. Allowing the question to Elizabeth Glover.

13. The refusal to allow Andrew Boyd to be recalled.

14. The ingredients necessary to constitute murder in the first degree were not proved to exist.

*C. E. Boyle* (with whom were *W. H. Playford, T. B. Searight* and *Collins & Baily*), for plaintiff in error.

*A. D. Boyd,* District Attorney (with whom were *G. W. K. Minor* and *R. H. Lindsey*), for the Commonwealth.

The opinion of the court was delivered, January 5th 1874, by

AGNEW, J.—We think there was error in the refusal of the court to sustain a number of the prisoner's challenges for cause. How far an opinion formed by a juror upon the guilt or innocence of the prisoner is sufficient to sustain a challenge is not well settled. A half a century ago, when jurors were easily obtained, who had heard nothing of the cause, or so little as to have no fixed opinions upon the guilt of the prisoners, the rule was held strictly to exclude all who had in any manner formed and expressed an opinion.

At the present day, when newspapers, railroads and telegraphs have made intercommunication easy, and where reporters are alive to every occurrence, and the daily press eager to serve up the details of crime, the difficulty of obtaining jurors free from these wide-spread influences, has made courts less ready to listen to

[Staup v. Commonwealth.]

this cause of challenge. In the contrariety of opinions prevailing, it is needless to look abroad for precedents, but rather to be guided by the reasons lying at the bottom of the right of challenge. The great purpose of this right is to secure a fair and impartial trial. Chief Justice Marshall said, in the trial of Aaron Burr for treason, that "the court has considered those who have deliberately formed and delivered an opinion on the guilt of the prisoner, as not being in a frame of mind to weigh the testimony, and, therefore, as being disqualified to sit as jurors in the case:" 1 Burr's Trial 367. Chief Justice Taney laid down the following test, says Mr. Wharton in his Crim. Law, § 2981: "If the juror has formed an opinion that the prisoners are guilty, and entertains that opinion now, without waiting to hear the testimony, then he is incompetent. But if from reading newspapers or hearing reports, he has impressions on his mind unfavorable to the prisoners, but has no opinion or prejudice which will prevent him from doing impartial justice when he hears the testimony, then he is competent." It is evident that in the view of these eminent jurists, the opinion which should exclude a juror must be one of a fixed and determined character, one that has been deliberately formed, and is still entertained, and, therefore, in an undue measure shuts out a different belief. This is a prejudgment of the case, and constitutes a bias too strong to make the juror a fair and impartial judge. "But pre-judgment and giving an opinion on the statement of certain facts are very different things." "The first (it was said in McCausland v. McCausland, 1 Yeates 378) implies a strong disposition to favor one side or the other—a determination to find in one way let the evidence be what it may. The last involves the truth of certain facts and propositions in the sentiments delivered, and impressions thus made may be effaced by the production of evidence."

Justice Rogers said of this distinction that its good sense is its best recommendation: Commonwealth v. Flanagan, 7 W. & S. 420. His approval lends strength to it, and we may by use of it, find the middle ground upon which this case can be determined. Whenever, therefore, the opinion of the juror has been formed upon the evidence given in the trial at a former time, or has been so deliberately entertained that it has become a fixed belief of the prisoner's guilt, it would be wrong to receive him. In such a case the bias must be too strong to be easily shaken off, and the prisoner ought not to be subjected to the chance of conviction it necessarily begets.

But where the opinions or impressions of the juror are founded on rumor or reports, or even newspaper statements, which the juror feels conscious he can dismiss; where he has no fixed belief or prejudice, and is able to say he can fairly try the prisoner on the evidence, freed from the influence of such opinions or impres-

sions, he ought to not to be excluded. If exclusion should follow from such unsettled convictions, it would often be difficult to obtain a jury. These principles would have excluded all those jurors who had formed opinions still resting on their minds from hearing or reading the testimony given on the former trial; but it is sufficient for the purpose of reversing the sentence to say, that the tenth error is sustained. These principles, it is hoped, will be a guide for the next trial.

On the 11th assignment of error to the rejection of Henry Staup as a witness, we may say that Shay *v.* The Commonwealth, 12 Casey 305, is a case in point. Defendants jointly indicted for murder, though severing in their defence cannot testify for each other. The love of life is too strong to be placed in the balance against truth, and the result might often be, that both defendants would be acquitted when both were guilty.

It is conceded that if the testimony of the Commonwealth be accepted as true, all the ingredients to constitute murder in the first degree were proved to exist, and the 14th assignment of error must therefore fail. But, as in the argument, we listened to a discussion of the facts stated as though we were jurors, sitting to decide upon the guilt or innocence of the prisoner, it is proper to repeat what we have heretofore decided, to wit: That the Act of 15th February 1870, 1 Brightly's Dig. 610, does not make it our duty to review the facts on the question of the guilt or innocence of the prisoner, but only for the purpose of determining whether the ingredients necessary to constitute murder in the first degree, shall have been proved to exist. This has been so ably and clearly stated by Thompson, C. J., in the recent case of Grant *v.* Commonwealth, from Chester county, 21 P. F. Smith 495, it needs no further development.

As this case must go back for a new trial, the refusal to recall Andrew Boyd becomes unimportant. At most, it was a matter of discretion in the then attitude of the case. The 12th assignment needs no notice. We discover no error in it.

The sentence of the Court of Oyer and Terminer is reversed, and the record is ordered to be remanded to the court below, together with a copy of this opinion, setting forth the causes of reversal, for further proceeding in the said court, and a *venire facias de novo* is awarded.