COMMONWEALTH v. ANDREW TOTH ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF OYER AND TERMINER OF ALLEGHENY COUNTY.

Argued June 1, 1891*—Decided June 5, 1891.

1. When, in Allegheny county, a president judge and two associate law judges to assist him, are detailed to hold the courts of Oyer and Terminer and Quarter Sessions, it seems that, the associates being engaged holding jury trials in the Common Pleas at the time, a court of Oyer and Terminer may lawfully be held by the president judge alone.

2. A juror, called on the trial of an indictment for a murder, committed during a riot, and testifying that the preceding week he served as a juror on the trial of an indictment for the riot, on which the defendants and others were convicted, but had formed no opinion as to the guilt or innocence of the defendants of the murder charged, is not thereby disqualified.

3. Three defendants being tried together on an indictment for a murder committed* during a riot arising out of a labor strike, the evidence against the defendants, sufficient in character, having been properly submitted to the jury under proper instructions, a judgment on a verdict finding them guilty of murder of the first degree should not be disturbed.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 130 October Term 1891, Sup. Ct.; court below, No. 18 December Term 1890, O. & T.

On January 15, 1891, the grand jury returned as a true bill an indictment charging Andrew Toth, Michael Sabol and George S. Rusnok with the murder of Michael Quinn. On February 4th, the defendants, being arraigned, pleaded not guilty, and issue was joined.

———

* By advancement in the Middle District.

Charge of Court below.

The trial at once proceeding, before STOWE, P. J., it was made to appear that the defendants, with twenty-one others, were tried and convicted the preceding week on an indictment for riot on January 1, 1891, at the Edgar Thompson Steel Works. The rioters were Slavs and Huns, indiscriminately called Hungarians, workmen at the steel works engaged in a labor strike. They had gone upon the company's premises, injured and destroyed property, and by violence and other means were endeavoring to " persuade " other workmen from continuing at work.

John S. Peigher and Jonathan Phillips, both farmers, were called as jurors in the case on trial. In their preliminary examination,* they each testified that they had served as jurors on the trial of the riot case the preceding week, but they had not formed an opinion as to the guilt or innocence of the defendants, or either of them, on the indictment for the murder of Michael Quinn, and they had no conscientious scruples on the subject of capital punishment. The defendants challenged the jurors for cause. The challenges were severally overruled; exceptions.[3] [4]

In the case of the commonwealth, there was direct testimony of eye-witnesses tending to show that, during the riot referred to, supra, the prisoner Toth struck Michael Quinn a violent blow upon the head with a shovel, fracturing his skull; that the other prisoners were present assisting Toth and beating Quinn themselves, and that Quinn died on January 5th from the effect of wounds then received. Toth and Sabol admitted they were present on the grounds, but under coercion ; denied active participation in the riot, and denied that they had injured any one. Rusnok denied that he was present at all, and alleged that he knew nothing about the riot until afterwards.

At the close of the testimony, the court, STOWE, P. J., charged the jury :

The defendants respectfully ask the court to charge the jury :

1. That if the wound which caused the death of Michael Quinn was inflicted by defendant Toth at C furnace, as described by the witness, Peter Mullin, there can be no conviction of either of the other defendants, as there is no evidence that they or either of them were present, or aiding or abetting Toth in the act which produced the death of Quinn.

Charge of Court below.

Answer: Refused.[5]

2. If Toth, Quinn and Mullin suddenly met at C furnace, as described by the witness Mullin, and each party being in fear of the other, and each being armed as described by that witness, blows were immediately threatened and struck, and the fatal blow then delivered by Toth, the grade of the homicide, if not justifiable, would not rise higher than voluntary manslaughter.

Answer: Refused.[6]

3. If the wound which caused the death of Michael Quinn was inflicted by the defendants Sabol and Rusnok, at A furnace, as described by the witnesses, there can be no conviction of defendant Toth, as there is no evidence that he was present, or aided or abetted Sabol and Rusnok in the act which produced the death of Quinn.

Answer: Refused.[7]

4. If Sabol, Rusnok and others suddenly met at A furnace, as described by the witnesses, each being armed as stated by the witnesses for the commonwealth, and in fear of each other blows were immediately struck, the first being delivered by the persons who claimed to represent the property, and in the fight which followed, as described by the witnesses for the commonwealth, the fatal blow which caused the death of Quinn was delivered by the defendants Sabol and Rusnok, or either of them, the grade of the homicide, if not justifiable, would not rise above voluntary manslaughter.

Answer: Refused, see general charge on this point.[8]

5. It rests upon the commonwealth to prove the guilt of the defendants beyond a reasonable doubt; and if there is a confusion, inconsistency, or discrepancy in the proofs of the commonwealth, sufficient to leave a reasonable doubt in the minds of the jurors by whom the fatal blow was struck, the defendant or defendants, as the case may be, are entitled to the benefit of that doubt, and should be acquitted.

Answer: Refused as above.[9]

Now, in the case in hand, if the jury are satisfied that the defendants or any one of them were engaged in the riot that occurred at the Edgar Thomson Steel Works on the first day of January, 1891, actively participating in it, with the purpose and intent to drive out by violence and physical force such

workmen as might refuse to accede to their demands, or resist their attempt to drive the workmen away from their work; and if you also believe that Michael Quinn was killed by the violence of the defendants, either separately or conjointly,—that is, by blows from clubs, or sticks, or instruments of any kind used upon the body of deceased by all the defendants, whether they were together or in different places, and the blows were struck at different places and times during the continuance of the riot, and this violence was committed in pursuance of a common purpose of the rioters to drive the deceased and others away from their work, they are all equally guilty, under the law, of murder of the second degree. And it makes no difference that one or two of them did not himself inflict injury to an extent that would itself have occasioned death. In such case, each one is chargeable with and must be held responsible for the violence of the others, and the act of one must be held to be the act of all, so far as its legal effect is concerned.

There is no place, under such facts if established, for a conclusion of manslaughter, because the illegal and riotous attack of the defendants implies malice in law; and even if the blows struck by each or all of the defendants were in the heat of combat, thus brought about by their illegal attempt by force to drive away the deceased from his proper employment, the law will not allow them to protect themselves under the principle which ordinarily reduces the grade of crime from murder to manslaughter, when the killing is done under great provocation. The rule does not apply when the slayer is himself the attacking party. Nor does it apply where one of a number of rioters, attempting to drive others away from their proper places of business, meets with resistance from those he is attempting to drive away, and then during the ensuing conflict causes the death of one of those resisting his riotous purposes.

But the jury will bear in mind that all this only justifies the legal conclusion of murder of the second degree. Before there can be a verdict of murder of the first degree, the evidence must satisfy the jury that each defendant had in his mind the formed and conscious purpose to take the life of Quinn when he struck the blow he himself inflicted. To this extent, although the defendants may all be guilty of murder of the

second degree, because of their common concurrence and participation in the unlawful and riotous undertaking, each can be held liable only for his particular and individual purpose and intent to take life, which the jury must find to be established beyond a reasonable doubt.

If there were evidence sufficiently establishing the fact that the rioters, including defendants, had combined together to engage in this riotous proceeding, with an understanding or agreement to overcome all opposers, to the extent of taking life if necessary to accomplish their purpose, then they would all be held to have harbored an individual intent to take life. But no such evidence seems to exist in the cause; and therefore, as to whether the offence, if the defendants are guilty of anything, is greater than murder of the second degree, must depend, as before stated, upon what the jury may find to have been the actual individual purpose and intent of each defendant, at the time he committed his particular act of violence upon the person of the deceased. And that purpose or intent is to be gathered from all the evidence surrounding the blows struck; the size of the stick or club; its weight and character as likely to kill if used with force upon a man's body; the manner in which it was used; the apparent violence of the blows; in short, anything the testimony may show occurred at the time properly and naturally tending to indicate the actual purpose of the blows struck, and whether or not the actual intent was to take the life of the deceased.

If, then, the defendants, or any of them, are guilty of the unlawful killing of Michael Quinn, and the jury should be satisfied that it was done by any one of them in the participation in the riot which beyond question took place the day of the killing, and the jury should believe that this riot was inaugurated and executed for the purpose of unlawfully driving out of the steel works others working there, by violence, and that in consummation Michael Quinn was killed by such one of the defendants actually engaged in the riot at the time, he is under the law guilty of murder of the second degree.

If any one of the defendants was not present on the ground at the time of the riot, of course such one is not guilty. If any one was actually engaged in the riot, but took no part in injuring the deceased, then it is for the jury to find under the

evidence whether the common purpose of the rioters was to drive out the men working at the works, by force and violence and by the use of means involving great personal danger to those refusing to accede to their demands ; and if they so find, then such person is guilty of murder, even though he struck no blow and was actually engaged in carrying out the purpose of the riot in another part of the works.

—Here the court read, as to reasonable doubt, Commonwealth v. Drum, 58 Pa. 22, and proceeded :

Gentlemen, in conclusion : If you are satisfied beyond a reasonable doubt that the defendants or any one of them, while engaged in this riot made an attack with a stick or club of some kind upon Michael Quinn, such one, whoever he was that struck the deceased, was guilty of murder of the second degree, at least, if you believe that Quinn died from the effect of blows received from either one, or all of them together; and such should be your verdict as to such one, or two, or all three, unless the evidence satisfies you beyond a reasonable doubt that one, or two, or all, when he or they struck deceased, actually intended to take his life, and struck him to accomplish that purpose. But, if such should be the result of the evidence, and you are led to conclude that any one struck to kill, such one should be convicted of murder of the first degree, and as to such one as the evidence does not satisfy you struck intending to kill, your verdict should be murder of the second degree.

—The jury returned a verdict finding that the defendants were severally guilty of murder of the first degree.

A rule for a new trial having been argued, the court, STOWE, P. J., on April 8, 1891, filed an opinion in part as follows :

The evidence adduced on the trial of these defendants showed that a large party of men, some two hundred or more, who had been engaged in working in the Edgar Thompson Steel Works, became dissatisfied, and not only concluded not to work any longer at the works, but also determined that others engaged there should also quit; and, in pursuance of that resolution, suddenly and with great violence riotously intruded upon the premises of the company, making threats, and with clubs and weapons of various kinds, such as they could lay hold of at the time, making a clear and avowed purpose to drive out all who were

Opinion of Court below.

disposed to continue their work, by striking, beating and abusing whoever resisted their purpose or declined promptly to accede to their demands.   In the pursuance of this violent and illegal object, several persons were attacked and injured, and Michael Quinn was beaten in such a manner that he died in a day or two afterwards. . . . .

It cannot be questioned, as a matter of law, that under the evidence the parties who were engaged in this riot in which Quinn was killed, were all guilty of murder of the second degree; nor do I understand this doctrine to be questioned by counsel in this case, but if it should be, the authorities in this state are clear and decisive.   I take it, then, that it is useless to consider that question further.   But still, the great question presents itself, was there evidence to justify the jury in finding defendants guilty of murder of the first degree?   Assuming that Rusnok was at the riot, of which more hereafter, we have Toth, Sabol and Rusnok engaged in such acts of riotous violence as clearly shows a bold and determined attempt to execute a breach of the peace, in a tumultuous and dangerous manner, by such means and in a way that indicated a determination to use all the force necessary to compel those peaceably engaged in their usual occupation, to quit. work and leave the works.

Now, while I do not think the law should be strained to relieve a murderer under such circumstances, from the presumption of a specific intent to kill, where the acts of the rioters plainly indicate a general murderous purpose, yet I instructed the jury that the mere fact, that two or more are engaged in a riot not necessarily dangerous to life, would not justify them in saying that the intent to kill, entertained by one rioter, should be visited upon another, or that the specific intent to take life should be inferred even against the one who struck the deadly blow, without evidence tending to show his actual purpose at the time the blow was struck.   Upon this point I said to the jury:  " Each can be held only for his particular and individual purpose and intent to take life, which the jury must find established beyond a reasonable doubt.   If there were evidence sufficiently establishing the fact that the rioters, including defendants, had combined together to engage in this riotous proceeding, with an understanding or agreement to overcome all opposers, to the extent of taking life if necessary to accomplish

their purpose, then they would all be held liable to have harbored an individual intent to take life. But no such evidence seems to exist in this case; and therefore, as to whether the offence, if the defendants are guilty of anything. is greater than murder of the second degree, must depend, as before stated, upon what the jury may find to have been the actual individual purpose and intent of each defendant, at the time he committed his particular act of violence upon the person of the deceased. And that purpose or intent is to be gathered from all the evidence surrounding the blows struck; the size of the stick or club; its weight and character as being likely to kill if used with force upon a man's body; the manner in which it was used; the apparent violence of the blow; in short, anything the testimony may show occurred at the time, properly and naturally tending to indicate the actual purpose of the blow struck, and whether or not the actual intent was to take the life of the deceased."

But it is alleged that the court erred in its answer to the fifth point, to wit: . . . .

The gist of this point, as I understood it at the time and now understand it, was to have the court say to the jury, that if the jury could not say beyond a reasonable doubt which defendant struck the blow from which deceased died, none of them could be convicted of anything, because of such doubt. The point was therefore refused, and attention called to the general charge upon the law involved in the point. To have affirmed it would have been to say to the jury that although defendants were all rioters and all committed acts of violence upon Quinn from some of which he died, they were all to be acquitted of felonious homicide, because the jury might not be clear as to which particular blow of one or the other caused his death.

Of course I could not say that. But I did impress upon the jury with all the force of which I was capable that their verdict should not be greater than murder of the second degree, as to any of the defendants, unless the evidence satisfied them beyond a reasonable doubt that such defendant when he struck deceased actually intended to take his life and struck him to accomplish that purpose; but, that if they were led to believe that any one of the defendants struck to kill, such one was guilty of murder of the first degree, if death resulted from the blows received from either or all defendants. In other words,

Opinion of Court below.

the assault of all three defendants being in pursuance of a violent, dangerous or riotous purpose to make an attack upon the workmen peaceably engaged in their avocation, and all three being shown to have [acted?] in pursuance of said common riotous purpose, each entertaining at the time of his particular act of violence an intent to kill, manifested and emphasized by such acts as shown by the evidence each defendant was guilty of, they were all guilty of murder of the first degree, without reference to which blow was the immediate occasion of death. In this I think that there was no error, and I may add if there ever was a time in the history of this state when such a principle should be enforced it is now. Being of the opinion that the law submitted to the jury for its guidance was correct, the next matter for our consideration is, was there sufficient evidence to justify the jury in finding any or all the defendants guilty of murder of the first degree. . . . .

These facts were believed by the jury. The evidence showed a violent attack made by all the defendants. One blow was first struck by Toth, which the jury believed was intended to kill; and afterwards, the old man, then disabled and as he would seem stricken so that he would likely die, was caught by the other two defendants, held by one, Rusnok, while the other, Sabol, beat him, and after this, while he was on his knees he was again beaten by Rusnok. If these facts do not justify the jury in believing that there was a deadly intent in the minds of all defendants, I am at a loss to know what amount of proof the law requires to justify a verdict of murder of the first degree.

—Judgment having been passed, the defendants took this appeal, assigning for error:

1. There was no court of Oyer and Terminer of Allegheny county legally constituted with jurisdiction and power to try the defendants, at the time they were tried, convicted and sentenced.

2. The defendants were tried by and before a single judge, to wit, the Hon. Edwin H. Stowe, who had been detailed to hold the Oyer and Terminer and Quarter Sessions of the Peace of Allegheny county for December Term 1890, with Hons. F. H. Collier and J. F. Slagle to assist him; and the said Hon. F. H. Collier and Hon. J. F. Slagle were not sick or unable to at-

tend the trial of the defendants, but were at the time engaged in holding jury trials in Common Pleas No. 1, of the county aforesaid; and therefore the defendants have been illegally tried, convicted and sentenced.*

3, 4. The overruling of defendants' challenges.[3][4]

5–9. The answers to the defendants' points.[5] to [9]

*Mr. Thomas M. Marshall* and *Mr. A. M. Blakeley* (with them *Mr. A. Blakeley*), for the appellants.

As to jurisdiction, counsel cited: Act of February 27, 1875, P. L. 62.

*Mr. R. H. Johnston,* District Attorney, for the commonwealth.

As to jurisdiction, counsel cited: Act of March 18, 1875, P. L. 25; act of April 7, 1876, P. L. 19.

PER CURIAM:

This case does not require discussion.

The judgment is affirmed; and it is ordered that the record be remitted to the Oyer and Terminer, for the purpose of execution.