## Commonwealth v. Luccitti, Appellant.

192

Argued September 24, 1928. Before Moschzisker, C. J., Frazer, Walling, Simpson, Kephart, Sadler and Schaffer, JJ.

*Ralph W. Peacock,* with him *George W. Weaver,* for appellant, cited as to reference to other crimes: Shaffner v. Com., 72 Pa. 60; Snyder v. Com., 85 Pa. 519; Abernethy v. Com., 101 Pa. 322; Com. v. Saulsbury, 152 Pa. 554; Com. v. House, 223 Pa. 487; Com. v. Smith, 84 Mass. (2 Allen) 517.

*Warren S. Burchinal,* District Attorney, with him *Donald R. Hart,* Assistant District Attorney, for appellee, cited as to remarks of counsel: Com. v. Biddle, 200 Pa. 640; Com. v. Meyers, 290 Pa. 573.

As to threats: Kramer v. Com., 87 Pa. 299; Goersen v. Com., 106 Pa. 477; Com. v. Johnson, 133 Pa. 293; Com. v. Bell, 166 Pa. 405; Com. v. Valverdi, 218 Pa. 7; Com. v. Jones, 269 Pa. 589.

As to flight: Marcinkiewicz v. Kutawich, 87 Pa. Superior Ct. 260; Thompson v. DeLong, 267 Pa. 212.

Opinion by Mr. Justice Kephart, November 26, 1928:

Defendant, an Italian, with two others, was engaged in illegal liquor traffic in Washington County. On the evening of February 7, 1927, he and his partners were making deliveries of two cans of whiskey by automobile. They carried their weapons with them as usual. After delivering one can, they proceeded on their journey, stopping in front of a company store, near the railroad, where the second can was removed from the car. Defendant, with Roy Wenrich, one of his partners, left the car to make delivery of the can. They proceeded a short distance up the railroad tracks, Wenrich being a few feet ahead of defendant, when they were observed by officers Fox and Knapp, who started in pursuit. On reaching defendant, who was carrying the liquor, Knapp undertook to arrest him. He commanded Luccitti to halt; the latter dropped the can and immediately shot the officer, killing him instantly. Fox, meanwhile, passed Knapp and Luccitti, endeavoring to overtake Wenrich further up the track. As Fox approached, Wenrich shot him twice, slightly wounding him; Fox then turned and started down the track, Wenrich fleeing from the scene. Fox, in returning, passed defendant, who shot him twice in the back, one bullet going through the lung, the other cutting the spinal cord. He died in a few days, but was able to describe his assailant as a "short Italian bootlegger from West Brownsville," Luccitti being an Italian, his partners Americans.

Defendant fled to New York State, and when seen four months later he was going under an assumed name and disguised with a mustache. He was arrested in Elizabeth, N. J., ten months after these killings, in an unsuccessful fight with a dozen officers, two of whom he wounded. He was returned to Washington County, and while in jail attempted to escape, to commit suicide, and to fabricate his evidence. Defendant admitted he was at the scene of the murder, but denied his participation

194

in the shooting, placing the responsibility on Wenrich. The jury disbelieved his story, found him guilty of murder of the first degree and fixed death as the penalty. All the ingredients of that degree are present. This appeal raises trial errors, and an abuse of discretion in not ordering a new trial.

During the session of court at which this defendant was to be tried, another prisoner, Matakovich, convicted of first degree murder in an entirely different homicide, was called to the bar for sentence, his punishment having been fixed by the jury at death. Counsel for this prisoner, in addressing a plea for mercy to the court, said, "Can this case be compared with the case which your honor tried here just a few weeks ago in this county? Needless to mention the name of the case. But......is not this defendant entitled to more leniency and to more mercy than that defendant, and still at the same time, the jury sitting in this very—" At this point counsel was stopped by the court and admonished that the jury presently impanelled to try another homicide case (Luccitti's) were present, and, if such statements were persisted in, they might disqualify the panel. Counsel made no further reference to the subject. Defendant, in his motion for a new trial, urged that the remarks were highly prejudicial to him, as the court and every one present knew that Wenrich, defendant's partner, had just been found guilty of murder, and sentenced to life imprisonment, and that the remarks of counsel were intended to show that this offense, with which Luccitti was connected, was much more aggravated than that for which Matakovich was then to be sentenced to death. The court below refused to grant the new trial, and this, it is now urged, was an abuse of discretion.

Assuming the jury understood that a comparison was being made between the crime for which the prisoner was receiving a death sentence, and that for which Wenrich received life imprisonment, it is not clear that the

court below abused its discretion. Such circumstances as narrated are the inevitable result of our practice where jurors mingle with spectators and witnesses in the court room. Such incidents cannot be considered harmful unless the statements tend prejudically to influence the mind, creating such a condition of bias that the accused can not get a fair trial with that jury. Of this, the court below, in the exercise of judicial discretion, is the sole judge, and, further, where it appears that the prisoner had an opportunity to develop the juror's prejudice in an examination on voir dire and failed to use it, or where the answers show that in fact no prejudice existed, an appellate court will not consider the question of abuse of discretion on appeal. Here the usual questions sought to elicit from the jurors their state of mind toward the defendant, and were sufficiently comprehensive to include the colloquy between court and counsel.

As held in Com. v. Biddle (No. 1), 200 Pa. 640, 645 and Com. v. Meyers, 290 Pa. 573, 578, remarks made in open court in the presence of a panel of jurors who will try the accused, tending to prejudice a prisoner's cause, do not of themselves disqualify such jurors from serving in his case, unless it appears the prisoner had no opportunity to develop the jurors' state of mind in relation to the remarks. Where such opportunity exists, a trial court will not be convicted of an abuse of discretion in refusing a new trial because of such statement: Com. v. Minney, 216 Pa. 149, 150, 151; Com. v. Gelfi, 282 Pa. 434, 437.

Defendant complains because the court below admitted the Commonwealth's offer to show that defendant, at a time prior to the happening of the event for which he was being tried, while in an automobile engaged in the distribution of liquor, said to another officer, who had jumped up on the running board of the car and ordered the occupants to headquarters, "Get off," or "Get out," or "Beat it"; that defendant pulled

his gun and thrust it toward the officer; and that the officer jumped off the car and left. Under the offer, this testimony was introduced: "Q. Now, did you see what happened? A. Why, yes. Q. What happened? A. Tony pulls out his gun. Q. And what did he do with it? A. He says if he don't jump off that running board he will kill him. Q. What did the officer do? A. He jumped off the running board. Q. And what did you do then? A. I says, 'Tony,' I says, 'don't kill him.'"

The evidence introduced does not conform to the terms of the offer. There was no offer to show an oral threat to kill, nor the admonition to defendant, "Don't kill him." No objection was made to this evidence, and it cannot be considered as covered by that made to the original offer. Where an offer is made, either at side bar (as this was), or in open court, and the objection thereto is overruled, the evidence which follows should conform to the offer. If testimony varies in material parts, it is necessary to make a further objection to the evidence, or later move to strike it out. If this is not done, the error, if it is such, will not be considered on appeal.

Assuming, however, that defendant's objection was good, he had previously stated, in connection with the business of delivering liquor, "If an officer attempts to stop me on the road, I will shoot my way out. To hell with the officers." And again, "The same policeman will only stop me once." At another time, "That's the reason I carry that gun. If any officer stops me, I will shoot him." Under these circumstances, even had there been a specific objection to the evidence, it would have been error to exclude it.

The general rule is that, in a trial for a specific offense, evidence cannot be offered of another distinct, independent and unrelated offense: Shafner v. Com., 72 Pa. 60; Abernethy v. Com., 101 Pa. 322; Com. v. Saulsbury, 152 Pa. 554; Com. v. House, 223 Pa. 487. A different rule, however, must apply when the connection or relation

between the two crimes is manifest either from the crime itself or from proofs in connection therewith. Here it is admitted defendant was engaged in an unlawful business. The Commonwealth was endeavoring to prove intent or motive. Intent is provable by showing overt acts as well as by threats or admissions: Kramer v. Com., 87 Pa. 299; Goersen v. Com., 106 Pa. 477; Com. v. Johnson, 133 Pa. 293; Com. v. Bell, 166 Pa. 405; Com. v. Valverdi, 218 Pa. 7, 9, 10; Com. v. Jones, 269 Pa. 589, 592; Com. v. Camwell, 89 Pa. Superior Ct. 339, 345.

The statements above showed, as part of the plan or scheme in conducting an illict business, a general intention to kill officers of the law. It was as much a part of the general business as the transportation or delivery of the liquor. Where one is engaged in an unlawful business, and it appears that, as a part of that business, to enable it to be successfully carried on, the killing of any one of a certain group or certain individuals is deemed necessary, a threat, express or implied, or an attempt to kill any one of that group or class is evidence of intent in a case in which the accused is being tried, the murder being of one of that group or class: Com. v. Salyards, 158 Pa. 501, 504; Com. v. Griffin, 42 Pa. Superior Ct. 597; Com. v. Elias (No. 1), 76 Pa. Superior Ct. 576, 580; McClelland v. State, 138 Md. 533, 114 Atl. 584; State v. Carroll, 288 Mo. 392, 232 S. W. 699; see Justice SCHAFFER's discussion and review of analogous cases in Com. v. Winter, 289 Pa. 284, 290. Here the killing was part of a definite, preconcerted general scheme or plan arising from the established method of conducting that business. As was said in Com. v. Elias, supra, "the independent proof related to a plan or system of criminal action involving the criminal intent and showing the criminal design."

When the defendant was arrested, after the fight in Elizabeth, he was asked: "Is this the gun you had on the night of the killing?" To which he replied: "No; the gun I had that night was a 38 Colt and I subse-

quently sold it." The objection to this evidence is that when the question was asked it was not directed at the homicides in Washington County or any other place. It is always relevant to show flight, concealment of identity, resistance of arrest, and the remarks of the prisoner when arrested: Com. v. McMahon, 145 Pa. 413, 417; Com. v. Biddle (No. 2), 200 Pa. 647, 648; Com. v. DeFelippis, 245 Pa. 612, 617; Com. v. Delfino, 259 Pa. 272, 276. They have strong probative value in establishing a defendant's guilt. It did not appear defendant had been connected with any other killing; the officers, in their interrogation, might safely rely on the fact that the Washington County murder was the only one committed by defendant; no other killing was in defendant's mind, as is evident from the answer, which described a weapon similar to that used the night of the murder. Defendant started to fire the moment the officers apprehended him. It is fair to assume he knew what the officers wanted and what they meant when he was asked the question. The complaint is without merit, as is also the objection to the evidence of the defendant's going under an assumed name and growing a mustache.

The photographs submitted were objected to because they were front and side views, procured from the rogue's gallery in New York, were in no way connected with the shooting, and were not taken by the witness. The photographs were offered to show a change in appearance. The witness said he knew defendant and the photographs were a correct likeness of him; further, that he had been living under the name of Midia in New York. The witness, though he had not taken the pictures, was competent to testify that the photographs were a correct likeness of defendant before and after the murder. "Photographs are not of themselves substantive evidence and are not evidence per se. They become admissible when they fairly and truthfully represent the place or object desired to be reproduced;......there should be preliminary evidence......that it fairly rep-

resents the place or object": Carney v. Penna. R. R. Co., 63 Pa. Superior Ct. 138, 140; Caffery v. P. & R. Ry. Co., 261 Pa. 251, 255; Thompson v. DeLong, 267 Pa. 212, 218; Com. v. Swartz, 40 Pa. Superior Ct. 370; Marcinkiewicz v. Kutawich, 87 Pa. Superior Ct. 260, 262; 2 Wigmore on Evidence, 2d ed., section 793. On examination of the record, there is nothing to indicate that the pictures came from the rogue's gallery, and the lower court states in its opinion that there were absolutely no markings on the pictures of any kind which would show their use. But, granted that the pictures *were* of such a character, it would not necessarily mean that defendant was wanted for another crime. The fact that photographs are from the rogue's gallery should ordinarily be kept from the jury, but, under the circumstances of this case, the fact that they were admitted could have done the defendant no harm.

All the assignments are without merit. As stated in Com. v. Lockett, 291 Pa. 319, 326, the deliberate murder of a police officer in the performance of his duty is an offense of the gravest character. This country cannot be terrorized by bandits who deliberately make killing a part of their business. The defendant carried out his threat; he killed two officers.

The assignments of error are all overruled, the judgment is affirmed, and the record is remitted to the court below for the purpose of execution.