## Commonwealth *v.* Weston, Appellant.

Argued May 13, 1929. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Otto Kraus, Jr.,* with him *Michael Saxe,* for appellant. —Under the circumstances, keeping in mind the relationship and the thraldom which decedent exercised over defendant, all the elements of manslaughter were present: Com. v. Drum, 58 Pa. 9; Glasco v. Green, 273 Pa. 353.

A judge may express his opinion regarding the evidence, and in some cases it may be his duty so to do, but this should be so done as not to withdraw the evidence from the consideration and decision of the jury: Com. v. Johnson, 89 Pa. Superior Ct. 439.

Defendant did not receive an impartial trial: Com. v. Myma, 278 Pa. 505.

Admission of defendant of a prior similar but disconnected crime of which he had not been convicted, was not permissible evidence.

*Charles C. Gordon,* Assistant District Attorney, with him *John Monaghan,* District Attorney, for appellee.

OPINION BY MR. JUSTICE SADLER, July 1, 1929:

The defendant, William Weston, found guilty of murder of the first degree, with punishment fixed at death, complains that error was committed in his trial and asks that the judgment entered be reversed. The assignments of error relate principally to statements made by the trial judge in his charge to the jury, and the failure to answer certain points presented.

The facts surrounding the homicide are practically undisputed, and nearly all are to be found in three separate confessions, admittedly made by defendant, and his own testimony when called as a witness on his own

behalf. It appeared that he became acquainted with one Helen Coles in 1919, due to association with her husband. At that time both parties resided in New London, Connecticut, and a meretricious relationship between Weston and decedent began, which continued until the time of the murder. In 1928 he came to Philadelphia, where the woman then lived. Upon request, he loaned her the sum of $22, which, according to his statement, was to be returned before Christmas. On the morning of December 20th he called at her house, and remained there for an hour or two before the assault took place which resulted in her death. In this interval, a female neighbor called, but observed no quarreling between the parties. After she had left, an altercation arose because of a telephone conversation had by decedent, evidently with another man, which angered defendant. She also refused, upon demand, to return the money Weston had advanced, stating that it had been expended to purchase an overcoat for her husband. Defendant then, according to his statement, hit her lightly on the face, whereupon the woman struck him with a laundry iron above the eye, partly blinding him, and causing his face to swell, as he said, though the presence of any physical marks indicating this was contradicted by the officers who subsequently arrested him.

When hit, he was seated on a chair by a table, and immediately reached his hand beneath the latter searching for some article with which to protect himself. He picked up an axe, though stating he did not know it was such, and struck Mrs. Coles repeatedly over the head causing three fractures of the skull, and three other serious bruises, though one or more of the latter may have resulted from her fall. According to the coroner, who subsequently investigated, there were six separate wounds, of which two at least indicated that the sharp side of the instrument had been employed. Mrs. Coles was removed to the hospital and remained unconscious until December 29th, when she died.

After the blows had been inflicted, the defendant took the axe to the cellar of the house, and either threw or hid it behind a wood pile, sufficiently concealed as not to be observed by the officers who made a cursory examination when called to the house. It was discovered later, admitted by defendant to be the weapon used, and introduced in evidence at the trial. After disposing of it, Weston went to the second floor opened the closets and bureau drawers and took therefrom clothing and jewelry within reach. He then started to leave by the front door, carrying the articles, which had been appropriated, as he said, in payment of the money owed him, but, observing someone on the outside, altered his course, returned through the house, and left through an alleyway in the rear. He pawned a part of the goods stolen, and subsequently gave away the remainder.

Later, he was arrested and made three confessions detailing the events practically as above set forth. He claimed that the blows inflicted were not intended to kill, desiring merely to protect himself, using for this purpose, in the admitted assault, the first weapon that came within his reach. It was not argued that the attack was excusable, as made in self-defense, and such position could not have been successfully sustained under the evidence. It was contended, however, that his anger was so aroused by the conduct of the decedent that the assault, resulting in death, was not in legal acceptation more than manslaughter.

The court, in its charge to the jury, narrated fully the facts disclosed both on behalf of the Commonwealth and defendant, and plainly charged the jury as to its duties. It defined correctly what constituted murder of the first and second degree, as well as manslaughter, and told the triers that they might convict of any one of the offenses designated or acquit. Several points were presented by the defendant, suggesting that the circumstances proven did not warrant a conviction of other than the lesser crime defined, and these requests for in-

structions may, for present purposes, be considered as accurate statements of the law. They were not answered by the trial judge in the form presented, but the principles enunciated therein were fully and concisely declared in the charge itself. Although points which state correctly abstract propositions of law, where the jury might find there was some evidence to make them applicable, should ordinarily be affirmed without qualification, yet where the same proposition has been fully explained in the charge itself, a repetition becomes unnecessary: Com. v. James, 294 Pa. 156. When the testimony shows the offense to be murder, if any crime has been committed, and the proven facts do not warrant a reduction of the crime from murder to manslaughter, the court is not bound to charge upon the latter question: Com. v. Spardute, 278 Pa. 37; Com. v. Mellor, 294 Pa. 339. In the instant case, it was claimed there was evidence of a killing, the result of passion or sudden frenzy, and the court charged amply on the subject, and submitted to the jury the question as to whether or not the proof negatived the presence of legal malice as well as an intention to kill.

Complaint is made that the court, in instructing on this subject, expressed the belief that the facts proven were not sufficient to reduce the offense to manslaughter, if the guilt of defendant of assault was established, but it expressly stated that such declaration was not controlling, in these words: "I say to you, frankly, that in my opinion the facts in this case—and you are not bound by my opinion, for you have a perfect right, regardless of what the court or anybody else thinks, to do as you please—do not constitute manslaughter." And again, at the close of the charge, when complaint was made of the refusal to answer the points concerning manslaughter, on the ground that the trial judge had expressed his personal view, the court said: "I repeat that you are not bound by my opinion. You have a perfect right to do anything you please." That this was not error, so

long as the power of the jury to pass upon the facts was not withdrawn, cannot be the subject of question under our decisions: Com. v. McGowan, 189 Pa. 641; Com. v. Cunningham, 232 Pa. 609; Com. v. Lessner, 274 Pa. 108.

It is further urged that the evidence did not justify a finding of premeditation, permitting the jury to find a verdict of murder of the first degree. This contention cannot be sustained under the evidence submitted. The killing was caused by the assault with a deadly weapon producing three fractures of the skull and other serious bruises, though some injury may have resulted from the fall of the deceased to the floor. From its use, the jury was justified in finding an intent to kill: Com. v. Drum, 58 Pa. 9; Com. v. Green, 294 Pa. 573. Even if the first blow alone caused the death, the jury would have the right to consider those subsequently struck as indicating defendant's intent: Com. v. Cavalier, 284 Pa. 311: Com. v. Millien, 291 Pa. 291. It was not error for the court to say that the infliction of wounds with a deadly weapon, directed at a vital part of the body, as here, was evidence indicating a purpose to effect the natural result, the death of the one assaulted, nor was it wrong in declaring that, even if there was doubt as to the presence of such intent when the first stroke was delivered, the jury was warranted in finding that it may have been formed before the subsequent blows were delivered: Com. v. Millien, supra. In view of the admitted assault with the axe upon the decedent, directed to her head, the hiding of the weapon in the cellar after the perpetration of the deed, followed by the theft of the goods, and the attempt of the defendant to conceal his presence by fleeing from the rear of the house when he found that observation in the front was possible (Com. v. Luccitti, 295 Pa. 190), the jury was fully justified in reaching the verdict rendered.

One other assignment, not stressed on oral argument, is based on the alleged improper admission of a statement of Weston indicating that he had committed another offense in New London, from which city he came.

Ordinarily, proof of independent crimes, having no connection with the one on trial, cannot be received unless it tends to establish the guilt of the defendant of the particular offense under consideration by the jury, though, if such relation is shown, the proof is admissible: Com. v. Mellor, supra; Com. v. Luccitti, supra; Com. v. Quaranta, 295 Pa. 264. It will be noted, however, that the statement complained of in the present case was a part of the voluntary confession to the police officer (Com. v. James, supra; see also, Com. v. Parker, 294 Pa. 144), and was merely an introductory declaration of a fact made by the defendant preceding his description of what had occurred at the time of the killing of Mrs. Coles. The conversation as a whole with inspector Connelly was admissible. It began with these sentences: "I warned him that anything he might say would be used as evidence against him at the time of his trial in court. He was remorseful, and said he was sorry for anything that he had done. It was not the first time he had done a thing of this kind. He had done the same thing in another town." The entire narration of defendant, bearing upon the crime with which he was charged, was admissible, and the repetition of all that he said in reference thereto cannot be considered as an attempt on the part of the Commonwealth to prove an independent and distinct offense to his prejudice, which has met with condemnation in some of our cases.

The court below refused to grant a new trial, which was a matter within its discretion (Com. v. Nelson, 294 Pa. 544), and its conclusion was plainly justified by the evidence. A careful reading of the entire record, and of the charge, satisfies us that the case was fairly presented, and that the criticism that it magnified the side of the prosecution and minimized that of the defendant is unwarranted. There was no error which justifies a reversal, and the assignments of error are all overruled.

The judgment is affirmed and the record remitted to the court below with directions that the sentence imposed be carried out.