Commonwealth *v.* Celli, Appellant.

Argued April 26, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Everett Kent,* with him *S. Maxwell Flitter,* for appellant.

*Irving W. Coleman,* Assistant District Attorney, with him *Henry K. VanSickle,* District Attorney, for appellee.

OPINION BY KENWORTHEY, J., July 16, 1943:

Appellant was convicted and sentenced under two indictments charging pandering and accepting bawd money. Act of 1939, June 24, P. L. 872 §§513, 515, 18 PS §§4513, 4515. In her brief in the two appeals which followed she presents four questions. Only two of them are included in the Statement of Questions Involved. We have considered them all. They are all without merit and the judgments will be affirmed.

The evidence of appellant's guilt was overwhelming. The Commonwealth proved that she had been since 1930 the owner of the bawdy house; that she visited it daily; that she hired a 'housekeeper' who collected from the prostitutes, kept a record of the amount owed each, and settled with them at the end of each week; that she was the 'madam';[1] that before the first raid she called one

---

[1] Rose Russo, one of the prostitutes, on cross-examination by appellant's counsel, said: "Well now, she [the housekeeper] was not the madam, Mary Brands [the alias under which appellant was known] was the madam, she only was the housekeeper there working for a salary of twenty dollars a week for Mary Brands."

of them on the telephone and directed her (the prostitute) to "take the blame as the madam" and promised there would be nothing but a fine and immediate release; and that after the house had been raided the second time she, personally, settled with two of the prostitutes, and requested one to return to work one week later, which the prostitute did.

The next contention is that the trial was a nullity because the jurors were improperly impanelled. On February 12, 1943, which was on Friday of the second and last week of the regular term, the court issued a formal order "that the present February Term 1943, of Court of Oyer and Terminer and Court of Quarter Sessions of Northampton County be extended to the Second Monday of April 1943." Appellant's trial commenced on February 23. It is argued that the order was defective because it did not contain a formal detainer. The Act of 1881, June 10, P. L. 113, 17 PS §919, authorizes the court to extend any term or session "during a next succeeding week or weeks and detain the general panel of jurors in attendance, *without the issuing of a new venire for the additional week or weeks* ......" (Italics supplied). Perhaps it would have been better to have incorporated in the order appropriate words directing that the jury be detained during the extended period as in *Com. v. Bell,* 4 Pa. Superior Ct. 187. But the act requires no such formality; its purpose was to avoid it. And although the record does not show in exactly what manner the jurors were notified to return, the fact is that on the morning of the 23d there were present an adequate panel of fifty-five from which the jury in appellant's case was drawn. The informality with which they were detained in no way prejudiced appellant's rights. See *Com. v. Nye,* 240 Pa. 359, 87 A. 585; *Com. v. Scouton,* 20 Pa. Superior Ct. 503.

The next contention is that the court committed reversible error in permitting the captain of police to

testify that appellant's house had, for many years, the reputation of being a bawdy house. Although this statement of the witness was originally objected to, it was repeated several times in answer to cross-questions put by counsel for appellant and again—this time without any objection—on redirect examination. See *Com. v. Dempsey*, 146 Pa. Superior Ct. 124, 22 A. (2d) 76. But in our opinion, the evidence was clearly admissible. *Com. v. Visotsky*, 129 Pa. Superior Ct. 86, 195 A. 148, and cases cited. And in view of the quantity of direct evidence of appellant's proprietorship of the enterprise it scarcely can be said to have prejudiced her.

Finally, appellant contends the court should have granted her motion for continuance. There are a number of statements in the brief in support of this contention which do not appear in the record. But from the assertions made by counsel for appellant at the time the motion was made, which we accept as true, the present case was the seventh 'vice' case tried before the same panel of jurors; there were guilty verdicts in all the previous six; many of the jurors in the panel from which appellant's jury was drawn had been in court and heard the evidence in the others; and some of the members of the panel had served in one or some of the previous cases. When asked by the court to explain the basis of his motion, counsel for appellant said, "the point I am making, Your Honor, is that there is a sort of psychology in the matter and I say that after two weeks and two days' service in this court room that there is not a juror who may have been sitting around here for all that time who can eliminate everything that was said in the last two weeks and two days and go into that jury box and render a verdict without thinking back over something he or she has heard in the past two weeks and two days." The trouble is the motion and the assertions in support of it fall far short of establishing that anything the jurors heard

would, in fact, prejudice them against this appellant. If the position were valid it would come dangerously near putting an end to established practice of holding a revolving panel in the court room ready to serve as they are called. A juror, to be qualified, need not "eliminate everything that was said" from his mind, even though what he heard was in the court room or as a juror in another similar case. *Com. v. Toth,* 145 Pa. 308, 22 A. 157; *Buck v. Com.,* 107 Pa. 486; *Com. v. Wasson,* 42 Pa. Superior Ct. 38. The question is whether the statements made in his presence have tended to prejudicially influence his mind by creating such a condition of bias as to prevent him from giving the accused a fair trial.[2] *Com. v. Lucitti,* 295 Pa. 190, 145 A. 85. The time and place to ascertain these things was by the examination of each juror on his voir dire, of which right appellant elected not to avail herself. The learned court below heard all of the previous cases, knew what had been said, whether it was prejudicial to appellant, and was in a much better position than this court to decide the matter. We find nothing which convinces us there was an abuse of discretion. The situation in *Com. v. Petrillo,* 338 Pa. 65, 12 A. (2d) 317, which is relied upon, was entirely different. There, during the trial, the prosecutor kept in court, under guard, a number of other persons accused of having conspired with defendant to commit murder in other cases and on several occasions he referred to them as such. By his conduct he, in effect, told the jury Petrillo had not only murdered the victim in the case on trial but that he had murdered a number of others.

As we have already indicated, it would be difficult for a fair-minded jury in the present case to have reached any other result.

The judgments are affirmed and it is ordered that

---

[2] With certain qualifications not here material. See *Staup v. Com.,* 74 Pa. 458; *Com. v. Vitale,* 250 Pa. 552, 95 A. 724.

the defendant appear in the court below at such time as she may be there called for compliance with the sentences or any part thereof which had not been performed at the time these appeals were made a supersedeas.