Commonwealth *v.* Filigenzi, Appellant.

Argued April 12, 1961. Before ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ. (RHODES, P. J., absent).

582

*James M. Keller,* for appellant.

*Joseph Solomon,* District Attorney, with him *Chris G. Papazickos,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., June 15, 1961:

This is an appeal by Gedio J. Filigenzi, the defendant-appellant, from the judgment of sentence of the Court of Quarter Sessions of Lawrence County, Pennsylvania, after conviction of indictments charging prostitution and assignation, acceptance of bawd money, and transporting a female for the purpose of prostitution; and from an order of the said court dismissing his motions in arrest of judgment and for a new trial. He was also convicted of pandering but in that case the court below awarded a new trial.

The evidence, considered in the light most favorable to the Commonwealth, *Com. v. Mitchell,* 181 Pa. Superior Ct. 225, 124 A. 2d 407 (1956), may be summarized as follows: In June, 1960, Beverlee Jean Ornelas, eighteen years of age, married but separated from her husband, came to New Castle, Pennsylvania, to seek employment as a waitress. She first met the defendant at the Club Casa Savoi, a private club in New Castle. After several visits to the club, the defendant and some of his friends took Beverlee to a cottage on the out-

skirts of the city, known as Trott's Cabin, where he informed her that she was to serve as a prostitute under his orders. At that time he threatened her with physical violence should she decide "to go to the law".

Shortly thereafter, the defendant met Beverlee again at the Casa Savoi club and told her to go to the Leslie Hotel in the same city. He drove her from the club to the hotel and on the way told her that he would remain downstairs in the barroom and would direct customers to her room. He registered her in the hotel under an assumed name. She went to the room and there received six or seven men sent to her by the defendant, with whom she had unlawful intercourse. The defendant gave her about $15 to get a new dress and have her hair done. The next evening, while still at the hotel, Beverlee became intoxicated and was berated by the defendant because she was in no condition to take care of his customers, so that he lost $50.

About a week later, the defendant arranged for her to go to the New Penn Hotel where she had unlawful intercourse with several members of a visiting softball team. The next evening he made arrangements for her to entertain customers at the Fenati Brick Yard on Croton Avenue. Several days later he took her to another club picnic at which time she engaged in unlawful intercourse with men sent to her by the defendant. She spent a night with a man sent to her by the defendant at Kings Motel, on the outskirts of New Castle.

After the night at the motel, she did not see the defendant for some time but on July 16, 1960, upon entering her apartment at the corner of Scioto Street and Long Avenue, New Castle, she found that it had been ransacked. She reported this to the manager of the apartment and to a local justice of the peace. When the defendant came to her apartment she refused to admit him because of her fear that he had knowledge that she "had gone to the law" and a commotion ensued,

She ran out onto the fire escape and began to scream for help. The police arrived and took her into custody, at her request for protection, and then she gave them the information which resulted in the prosecution. The defendant did not testify on his own behalf.

The jury convicted him of all charges. A new trial having been granted in the pandering case, the court below sentenced the defendant on the charge of accepting bawd money, to pay the costs of prosecution, a fine of $100 and imprisonment in the Allegheny County workhouse for a period of not less than 14 months nor more than 36 months; on the charge of transporting a female for the purpose of prostitution, to pay the costs, a fine of $1 and imprisonment for not less than 14 months nor more than 36 months to run concurrently with the prior sentence; and on the charge of prostitution and assignation, the costs and fine of $1 and imprisonment for a period of four months to run concurrently with the prior sentence.

It appears that Joseph Leonelli was jointly indicted with the defendant. Prior to the selection of the jury, the district attorney accepted his plea of guilty to the crime of prostitution and assignation only. Subsequently the defendant was tried on all charges. The defendant contends that it was prejudicial error for the court to have permitted the district attorney to take the plea of guilty of a jointly indicted defendant to the crime of prostitution and assignation in the presence of the panel of jurors from which the jury was chosen to try him. At the time the plea was taken the statement was made to the court that the defendant entering the plea had never been in trouble before.

Remarks made in the presence of a panel of jurors, who will try the accused, tending to prejudice the prisoner's cause, do not of themselves disqualify such juror from service in the case, unless it appears that the defendant had no opportunity to develop the juror's state

of mind in relation to the remarks. Where such opportunity exists, and it did exist here, the trial court will not be held to have abused its discretion in refusing a new trial because of such statements. *Com. v. Luccitti,* 295 Pa. 190, 195, 145 A. 85 (1928).

"A juror, to be qualified, need not 'eliminate everything that was said' from his mind, even though what he heard was in the court room or as a juror in another similar case." The question is whether the plea taken and the remarks made in the presence of prospective jurors were such as to prejudice their minds by creating such a condition of bias as to prevent a fair trial to the accused. The time and place to determine this was by examination of each juror on voir dire, and this defendant proceeded to trial without availing himself of this right. *Com. v. Celli,* 153 Pa. Superior Ct. 88, 92, 33 A. 2d 97 (1943).

The second question raised on appeal claims prejudicial error by the court below in admitting into evidence photographs of the girl's ransacked room when there was no evidence connecting the destruction in the room with the defendant. The photographs in question were admitted by the court below to corroborate the testimony of the officers and Beverlee as to the condition of the room.

There is no question concerning the fact that the pictures were properly authenticated and it is well settled that photographs are admissible when relevant to a subject under consideration. 1 Henry, Pennsylvania Evidence, §428. The photographs were admitted by the court below for the sole purpose of corroborating the testimony of the witnesses who described the condition of the apartment and the credibility of the testimony of Beverlee was especially under severe attack by the defendant. The court below told the jury in his charge that "there is no evidence as to who caused the condition which the photographs portray."

However, we agree with the commonwealth that the photographs were relevant for a further reason, to wit, as corroborative evidence of her state of mind; her fear that it was the defendant who had threatened her with physical violence, that despoiled her room, and later resulted in her throwing herself into police custody when he tried to obtain entrance to her apartment.

. The defendant also contends that the court below erred in refusing to sustain the motion in arrest of judgment because one of the essential elements of the offense, to wit, the taking of money, was not made out except by circumstantial evidence, and that only, from the extra judicial statements of Beverlee Jean Ornelas.

The claim that the testimony of Beverlee contains extra judicial statements is without merit. There was no conspiracy charge in this case and the commonwealth never alleged that the defendant was a conspirator with others in a plan to have Beverlee become a prostitute. The acts of the defendant stand alone as related by Beverlee and the defendant had an opportunity to deny or explain this evidence but did not do so either by his own witnesses or by taking the stand in his own defense. Beverlee's testimony established the fact that he used her as an instrument in the commission of these crimes and so established a specific injury or loss and somebody's criminality as the source of the injury or loss. *Com. v. Dolph,* 164 Pa. Superior Ct. 415, 65 A. 2d 253 (1949). The statements attributed to the defendant were admitted during the testimony of Beverlee Jean Ornelas, who at that time was under oath and subject to cross-examination by defendant's counsel.

Although the commonwealth did not establish by direct evidence the fact that the defendant received money for the services of Beverlee, the offense can be established circumstantially. From the evidence that he sent customers to her; that he directed them to her

room from a bar in the same hotel; that he supplied all her customers; that he berated her for spending too much time with a customer; that he berated her for getting intoxicated and causing him a loss of $50; that he gave her money; from all this circumstantial evidence the jury could, and evidently did, properly infer the taking of money by the defendant. The order of admission of proof is a matter largely in the discretion of the trial court. *Com. v. Horvath,* 187 Pa. Superior Ct. 206, 144 A. 2d 489 (1958).

This Court is satisfied that the defendant received a fair trial and the charge of the court below was very thorough, and indeed, very favorable to the defendant. The assignments of error are all overruled, the judgments of sentence are affirmed and it is ordered that the defendant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with his sentence, or any part thereof, which has not been performed at the time this appeal was taken and made a supersedeas.